## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| VERONICA DUKES-ARDOIN, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. H-10-426 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| | § | |
| *Defendant.* | § | |

### MEMORANDUM AND ORDER

In this case seeking judicial review of the denial of Social Security benefits, Plaintiff Veronica Dukes-Ardoin ("Dukes")[1] brought this action pursuant to 42 U.S.C. § 405(g) for review of the final determination by Social Security Administrator Michael J. Astrue ("Commissioner") that she is not entitled to receive Title XVI supplemental security income ("SSI") benefits. Before this Court is Dukes's Brief (Dkt. 7), and the Commissioner's Motion for Summary Judgment (Dkt. 9). Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the court **denies** the Commissioner's motion, **grants** summary judgment for Dukes, and **remands** the case for further proceedings.

---

[1] In her hearing before the ALJ, Plaintiff Veronica Dukes-Ardoin asked to be referred to as Veronica Dukes. (Tr. 30). Accordingly, Plaintiff will be referred to as "Dukes."

## I. BACKGROUND

Dukes is a 38-year old woman. (Tr. 20). She is HIV positive and suffers from asthma, lumbar back pain, and a depressive disorder. (Tr. 16). She has also been assessed as having borderline intellectual functioning. (Tr. 16).

### *Medical Records*

Dukes's medical evidence ranges from October 1998 until December 2008. From October 1998 until August 2004, Dukes went to the emergency room on sixteen occasions for asthma-related problems. (Tr. 218, 237, 249, 262, 268, 276, 284, 287, 288, 293, 302, 305, 312, 317, 325, 331). On some occasions, intubation was required to treat her asthma. (Tr. 288). For her diagnosed "asthma exacerbation," Dukes was prescribed Albuterol delivered via an inhaler or nebulizer every 4-6 hours. (Tr. 219, 238, 258).

Dukes returned to the hospital in May 2007 with complaints of back pain after picking up her 18-pound daughter. (Tr. 502). She was 24 weeks pregnant, and was diagnosed as HIV positive with a high viral load of 11,500 and a CD4 of 471. (Tr. 504). Her asthma was stable. (Tr. 504).

During two pre-birth check-ups, Dukes's asthma was stable, and her HIV was treated with Combivir and Koletra. (Tr. 438, 439, 440). However, on September 26, 2007 Dukes reported worsening asthma symptoms. The physician prescribed stress-dose steroids (Tr. 387). Her HIV viral load was undetectable, with a normal CD4 count of 518. (Tr. 387). Her asthma and HIV were also stable

during pre and post tubal ligation check-ups, resulting in no need for the use of the Albuterol nebulizer.  (Tr. 372, 390).

On March 14, 2008, Dukes entered the hospital with symptoms of anxiety including restlessness, fatigue, irritability, and nausea. (Tr. 557).  Her HIV and asthma were both stable. (Tr. 593).

On April 8, 2008 Dukes received a psychological evaluation to help diagnose her current levels of mental and emotional functioning.  (Tr. 690). According to the psychologist, she had a Full Scale I.Q. score of 79, with verbal intellectual functioning in the Borderline range and nonverbal intellectual functioning in the Low Average range. (Tr. 692).  Dukes's academic functioning was at the elementary school level.  (Tr. 692).  Her personality assessment indicated she was experiencing clinical depression, and her final diagnosis was for Major Depression, Recurrent Severe without Psychotic Features and Borderline Intellectual Functioning.  (Tr. 693).

On May 5, 2008 Dukes injured her back lifting a friend's son into bed and was diagnosed with a thinning of the disc and mild disc space narrowing at L4-L5, and was prescribed a muscle relaxer and ibuprofen to help with the pain.  (Tr. 609, 685, 740, 742).  There were no other ailments described during that visit, and her HIV and asthma were stable. (Tr. 609, 613).  When Dukes returned to the hospital on June 3, 2008, she was depressed and anxious, but cooperative, socially appropriate, logical, coherent, and goal-directed.  (Tr. 602).

On May 30, 2008, Dukes received a mental status and current level of functioning evaluation as an assessment for her disability claim.  According to the evaluation, her thought process appeared logical and goal-directed, while her overall prognosis was poor, with a predicted post-treatment prognosis of fair.  (Tr. 711-12).  The psychiatric review determined that Dukes suffered from an affective disorder and mental retardation, but there were only mild restrictions on daily living and social functioning, and no episodes of decompensation.  (Tr. 713, 723).

At the request of the psychiatrist, Dukes was given a Physical Residual Functioning Capacity ("RFC") and Mental RFC evaluation on June 05, 2008.  The Physical RFC, conducted by Dr. Scott Spoor, determined Dukes was limited to lifting twenty pounds occasionally, ten pounds frequently, could stand or walk about six hours in an eight-hour workday, could sit for about six hours in an eight-hour day, and had no limitations regarding what she could push or pull. (Tr. 728). The subsequent Mental RFC assessment, conducted by Dr. Robert Gilliland, determined that Dukes had a limited ability to understand and remember detailed instructions, and was moderately limited in her ability to maintain attention and concentration for long periods of time, sustain ordinary routines without supervision, and complete a normal workday without interruptions. (Tr. 735-36). In conclusion, Dr. Gilliland determined that Dukes was able to understand and remember simple instructions. (Tr. 736).

On July 30, 2008, two case assessments were completed regarding Dukes's physical and mental abilities.  Doctor John Durfor completed the physical

assessment. (Tr. 744). After adding the impairment of mild degenerative disc disease to Dukes's previous impairments of HIV and asthma, he affirmed the prior RFC of light work. (Tr. 744). Doctor Charles Lankford completed the mental assessment, and found Dukes's Major Depressive Disorder (MDD) affirmed her previous Mental RFC. (Tr. 745).

In August, Dr. Phillip Johnson completed a final Physical RFC report. (Tr. 747). After observing Dukes for almost three months, he determined her prognosis was fair, and her symptoms of back pain and asthma should be treated with ibuprofen and muscle relaxers. (Tr. 747). Dr. Johnson did not expect Dukes's impairments to last at least twelve months. (Tr. 747). He indicated Dukes could stand less than two hours, sit for about two hours, required unscheduled breaks during an eight-hour day depending on her asthma, occasionally lift less than ten pounds, and rarely lift ten pounds. (Tr. 748). Finally, Dr. Johnson indicated Dukes would likely miss about three days of work per month. (Tr. 749). In his associated medical records, Dr. Johnson noted Dukes's inspiratory and expiratory wheezing and shortness of breath. (Tr. 753). He also noted that she was out of inhalers, and needed to reorder to continue her asthma treatment. (Tr. 756-57). Another doctor, Zishan Samiuddin, noted that her grandmother-in-law's heavy smoking triggered Dukes's asthma. (Tr. 760).

On November 17th, 2008 Dukes arrived by ambulance to the Thomas Street Clinic with flu-like symptoms, including a cough, headache, and body ache. (Tr. 776). Dukes had a slight wheezing during inspiration. (Tr. 776). Her

diagnosed upper respiratory infection was treated with prescribed antibiotics and ibuprofen. (Tr. 781).

Dukes again visited the hospital on December 17, 2008 with nasal congestion, cough, chills, body ache and fever. (Tr. 812). Dukes was completing back-to-back breathing treatment at home, but was unable to improve her breathing due to fluid in her lungs. (Tr. 812, 813). She was given antibiotics to help correct her respiratory infection. (Tr. 813).

### *SSI Application and Hearing*

Dukes filed an application for SSI benefits in March 2008. (Tr. 106). According to her application, she had been disabled since September 2006 as a result of HIV, asthma, depression, and anxiety. (Tr. 62). Her application was initially denied on June 6, 2008, and again denied upon reconsideration on July 31, 2008. (Tr. 63, 71). Dukes requested a hearing, which occurred on February 13, 2009, before Administrative Law Judge David J. Herbert (the "ALJ").

At the hearing, Dukes testified that she was currently residing in a transitional living center. (Tr. 32). She graduated from high school, but received no schooling since. (Tr. 33). Dukes testified that she last worked for fifteen hours per week as an in-home health care provider for Cages Medical in 2006. (Tr. 33, 45). She previously worked as a stocker in the retail store Weiner's for two months, full time at a Stop & Go convenience store for two weeks, and at an AT&T call center for two days. (Tr. 33-34). She testified that she was fired from those jobs because she was bipolar, and started fights and arguments with her

supervisors. (Tr. 34). She testified that, when younger, she had problems getting along with people in school, resulting in suspension on numerous occasions. (Tr. 34).

Dukes testified that in May of 2007 she was diagnosed with HIV, which she unknowingly contracted from her husband, who she was in the process of divorcing. (Tr. 35-36). At the time of her diagnosis, she had seven children, and was pregnant with another child. (Tr. 36). All her children were currently in the custody of Child Protective Services. (Tr. 36). Dukes testified that, as a result of her HIV diagnosis and her children being in CPS custody, she entered a state of depression. (Tr. 37). She was placed on Zoloft. (Tr. 38). Dukes testified that she had multiple emergency room visits because of asthma exacerbations. (Tr. 38). However, she took medication to control her asthma, and had not been admitted to the hospital for asthma that year. (Tr. 38).

Dukes testified that she is also being treated for lower back pain, but that she never had surgery or physical therapy. (Tr. 49). She was prescribed a muscle relaxer to help with the pain. (Tr. 49).

Dukes testified that she had most recently sought medical care on December 17th, 2008, for a respiratory infection. (Tr. 40) Dukes testified that she went to the emergency room six times in 2008 for her breathing problems, and once remained in the hospital overnight. (Tr. 50). She further testified that she has an inflammatory process in her lungs, and that her left lung is very weak as a

result of the damage from her asthma.  (Tr. 43).  Dukes testified that she used a nebulizer four times a day to manage her asthma.  (Tr. 43).

Dukes testified that she was currently being treated at the Thomas Street Clinic, a clinic that treats individuals with HIV. (Tr. 38).  The Clinic also provided treatment for her diagnosed bipolar manic-depression through the prescription of Trazodone and Zoloft. (Tr. 39).  However, Dukes testified that she has never been a patient in a mental health hospital.  (Tr. 48).  Dukes testified that the medication helps some, but she continued to cry during the day, have suicidal thoughts, and argue with anyone around.  (Tr. 39-40).

Dukes testified that her HIV medications Kaletra and Combivir have allowed her CD4 levels to return to normal, but the medications cause nausea and diarrhea that lasts for one to two weeks.  (Tr. 41).  Additionally, the Trazodone and Zoloft leave her drowsy.  (Tr. 42).  Dukes testified that she was required to lie down for six to eight hours after taking the medication.  (Tr. 42).  Dukes testified she had difficulty leaving the house as a result of her medication.  (Tr. 42)  She also had strong sharp pains in her back and knees, which occurred at least two or three times a week.  (Tr. 43).  Most recently, she began sleepwalking when she was off her medications, but she did not have that problem when she took the medication. (Tr. 48).

The Medical Expert, Dr. Hamill, testified that Dukes suffered from a combination of impairments, namely depressive disorder, NOS, and borderline intellectual functioning.  (Tr. 53).  Dr. Hamill testified that the listings 12.04 and

8

12.05 had the most applicability to Dukes, but that she would not meet or equal either limit.  (Tr. 54).  According to Dr. Hamill's understanding, Dukes's records indicated a fairly positive treatment response.  (Tr. 54).  Additionally, she was not treated for bipolar disease but straightforward depression.  (Tr. 54, 55).  Therefore, Dr. Hamill determined that any interference in her social functioning abilities would be mild; interference in concentration, persistence and pace would be moderate; and there were no episodes of decompensation. (Tr. 55). As a result, Dr. Hamill would limit Dukes to very simple, repetitive, one, two, or three step tasks. (Tr. 55).  He would not assign Dukes to any kind of forced or assembly line pace. (Tr. 55).  He would limit her contact with the general public to incidental contact, and contact with co-workers to occasional contact.  (Tr. 55-56).  Finally, he would prevent her from working from unprotected heights or with machinery with large moving parts.  (Tr. 56).

Next, the ALJ spoke with the Vocational Expert ("VE"), Ms. Gilwreath. (Tr. 56).  The ALJ first posed a hypothetical question to the VE, asking about a person who could work at the light exertional level, could occasionally lift and carry twenty pounds, and frequently ten pounds, and could stand and walk up to six hours in a normal workday with normal breaks and sit for six hours.  (Tr. 57). The ALJ stated that the hypothetical individual could not work at unprotected heights, with dangerous machinery or with hazards.  (Tr. 57).  Due to mental impairments, the hypothetical person could only carry out simple one, two, or

three step routine, repetitive tasks. (Tr. 57). The person could not work at an assembly line or forced paced. (Tr. 57).

As a result of his hypothetical question, the VE determined that the person could work at light, unskilled work at two, such as office cleaners, laundry press operators, or photocopy machine operators. (Tr. 58).

The ALJ then provided a second hypothetical, with an individual who could only lift and carry less than ten pounds, can stand or walk for less than two hours, can sit for two hours with normal breaks, can only occasionally twist or turn her head, look up or down and hold her head stable, and can do occasional stooping, squatting, and climbing. (Tr. 58). The individual would also need to miss work three days a month. (Tr. 58). Given this hypothetical, the VE determined there were no jobs in the regional or national economy for such a person. (Tr. 58). The VE stated that her testimony did not in any way conflict with the Dictionary of Occupational Titles, and Dukes's lawyer declined to ask any more questions. (Tr. 58).

### ALJ's Decision

The ALJ found that Dukes had not engaged in substantial gainful activity since February 22, 2008. In addition, the ALJ found that Dukes is HIV positive, has asthma, lumbar back pain, a depressive disorder, and borderline intellectual functioning. (Tr. 16). After reviewing the medical evidence from 1990 to May 13, 2008, the ALJ determined that these impairments were severe. (Tr. 16). The ALJ found that Dukes was diagnosed as HIV positive in May 2007. (Tr. 16). The ALJ

also found that Dukes had a history of treatment for asthma since 1990, which required the use of medication, and that Dukes had complained of back pain that was treated with Ibuprofen. (Tr. 16). The ALJ determined that Dukes visited the hospital for complaints of back pain on May 5, 2008, but there were no reports of multiple emergency room visits or hospitalizations regarding her asthma. (Tr. 16).

The ALJ also reviewed records from the Thomas Street Clinic regarding Dukes's history of depression. While the records report symptoms that include depressed mood, crying spells, feelings of guilt, worthlessness, and fatigue, the ALJ noted that a mental status determination dated March 14, 2008 reported that Dukes was in no apparent distress. (Tr. 16). According to the report, Dukes's thought process was logical, coherent, and goal directed, and there was no helplessness, hopelessness, worthlessness or guilt. (Tr. 16-17).

The ALJ reviewed a psychological consultative examination undertaken on April 8, 2008, where Dukes reported having symptoms of depression. (Tr. 17). The doctor noted that her thought processes were normal, but that her concentration and attention span were poor. Dukes obtained a full scale IQ score of 79, placing her in the borderline range. (Tr. 17). The ALJ included the doctor's conclusion that Dukes had the following functional limitations: episodes of severe depression; loss of energy, chronic fatigue; low self-esteem; decreased attention and concentration, social withdrawal; decreased effectiveness and productivity; poor academic skills; concrete thought process; and short attention span. (Tr. 17).

11

Updated treatment records show improving complaints of depression on April 22 and August 12, 2008. Most recently, the treatment record dated December 17, 2008 report the she felt like she was back to 100%, and denied having any problems with elevated mood, rapid thoughts, increased energy and impulsivity. (Tr. 17).

The ALJ determined that Dukes did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (Tr. 17). The ALJ determined that Dukes's physical impairments are managed by medication, and had not required significant forms of other treatment such as hospital confinement. (Tr. 17). Therefore the physical impairments were not of the severity to meet or medically equal any of the Listings. (Tr. 17).

The ALJ referred to Dr. Hamill's testimony that Dukes's impairments of major depression and borderline intellectual functioning show a fairly positive treatment response. (Tr. 17). The ALJ noted Dr. Hamill's opinion that Dukes would be limited to performing simple, repetitive one, two, or three step tasks; no forced or assembly line pace; limited to incidental contact with the general public and occasional contact with coworkers; and precluded from working from unprotected heights or with machinery or large moving parts. (Tr. 18).

The ALJ evaluated Dukes's mental impairments under listing 12.04 ("affective disorders"). (Tr. 17). Under those standards, the ALJ determined the mental impairments did not satisfy the Listings. (Tr. 17-18). The ALJ determined that meeting the "paragraph B" criteria required that the mental impairments must

result in at least two of the following: marked restriction of daily living activities; marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (Tr. 18). According to the ALJ, repeated episodes of decompensation, each of extended duration, means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. (Tr. 18).

Using this framework, the ALJ determined that Dukes had mild restriction in daily living activities, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. (Tr. 18). Also, the ALJ determined that Dukes experienced three episodes of decompensation, each of extended duration. (Tr. 18). However, the ALJ determined that because Dukes's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, these impairments did not satisfy the "paragraph B" criteria. (Tr. 18).

Additionally, the ALJ determined that "paragraph C" criteria were not satisfied because Dukes responds positively to treatment and has not required extensive hospitalizations due to exacerbation of her symptoms related to mental impairments. (Tr. 18).

After careful consideration of the entire record, the ALJ determined that Dukes has the RFC to perform light work which includes: (1) lifting/carrying twenty pounds occasionally, ten pounds frequently; (2) standing/walking six hours

out of an eight-hour workday; (3) sitting six hours out of an eight-hour workday; (4) no work around dangerous hazardous moving machinery or unprotected heights; (5) work limited to simple, routine one, two, or three step repetitive tasks; and (6) work limited to occasional contact with coworkers and only incidental contact with the general public. (Tr. 19).

In considering Dukes's symptoms, the ALJ followed a two-step process, first determining whether there is an underlying medically determinable physical or mental impairment, and then an evaluation of the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they will limit basic work activities. (Tr. 19). When statements about intensity, persistence, or functionally limiting effects of pain are not substantiated by objective medical evidence, the ALJ must make findings on the credibility of the statement based on the entire case record. (Tr. 19). The ALJ considered all the symptoms and the extent to which the symptoms can be reasonably accepted as consistent. (Tr. 19).

The ALJ determined that Dukes may have some of the subjective symptoms claimed at trial, such as her thoughts of suicide, the side-effects of her HIV medication, and her back pain. (Tr. 19-20). However, the ALJ did not believe the symptoms are to the degree Dukes alleged. (Tr. 20). The ALJ determined that Dukes's testimony was an overstatement of her subjective symptoms and functional limitations and was only generally credible. (Tr. 20). The ALJ noted that Dukes's pain was only treated with a muscle relaxer, which was not consistent with the level of pain alleged. (Tr. 20). The ALJ further noted

14

that Dukes responded well to treatment for her depression and HIV, and that there was no evidence of multiple emergency room visits for the asthma exacerbation. (Tr. 20). The ALJ concluded that Dukes failed to document her record with evidence that would support her claim of a disabling condition, and therefore the record was insufficient to substantiate the allegation that Dukes was unable to work. (Tr. 20).

Additionally, the ALJ determined that Dr. Johnson's medical opinion contained inconsistencies, was not supported by the record, and therefore provided the opinion little weight. (Tr. 20). Dr. Johnson provided a more limited prognosis for the patient, opining that Dukes could only stand/walk less than two hours and sit about two hours, be expected to take unscheduled breaks for her asthma, occasionally lift ten pounds, and that she would likely be absent from work three days per month. (Tr. 20). However, the ALJ drew significance from Dr. Johnson's opinion that the prognosis was fair and that her disability was not expected to last at least twelve months. (Tr. 20). The ALJ determined that this was an inconsistency in Dr. Johnson's opinion, and that the limitations were not supported by the objective medical evidence. (Tr. 20).

Considering the entire record, the ALJ determined that Dukes could perform other work available in significant numbers in the national economy. (Tr. 20). The ALJ noted that if Dukes had the RFC to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20. (Tr. 21). The ALJ noted that Dukes's ability to perform all or

substantially all of the requirements had been impeded by additional limitations, and therefore asked the vocational expert whether a job existed in the national economy for this specific situation. (Tr. 21). Based on the testimony of the vocational expert that Dukes would be able to perform the requirements of an office cleaner, laundry press operator, or photocopy machine operator, the ALJ concluded that Dukes is capable of making a successful adjustment to other work, and therefore was "not disabled." (Tr. 21).

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment "should be rendered if the pleadings, the discovery, and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *Celotex Corp.*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

## III.   STANDARD OF REVIEW

When judicially reviewing a determination that an applicant is not entitled to benefits, we determine "(1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *see also* 42 U.S.C. § 405(g) (2010). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990). A finding of no substantial evidence is warranted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (internal quotation marks and citations omitted). The court may not re-weigh the evidence in the record, nor try the issues de novo, nor substitute the court's judgment for the Commissioner's, even if the evidence preponderates against the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

## IV. ANALYSIS

To be entitled to Social Security benefits, a claimant must show that she is disabled within the meaning of the Act. *Villa*, 895 F.2d at 1022. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 423(d)(1)(A).  The ALJ must conduct a five-step process when

examining a claim of disability:

> (1) a claimant who is working, engaging in a substantial gainful activity,
> will not be found to be disabled no matter what the medical findings are;
> (2) a claimant will not be found to be disabled unless he has a "severe
> impairment"; (3) a claimant whose impairment meets or is equivalent to an
> impairment listed in Appendix 1 of the regulations will be considered
> disabled without the need to consider vocational factors; (4) a claimant who
> is capable of performing work that he has done in the past must be found
> "not disabled"; and (5) if the claimant is unable to perform his previous
> work as a result of his impairment, then factors such as his age, education,
> past work experiences, and residual functioning capacity must be
> considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *see also* 20 C.F.R. §

404.1520(a)-(e) (describing five steps).  "A finding that a claimant is disabled or

not disabled at any point on the five-step process is conclusive and terminates the .

. . analysis." *Harrell*, 862 F.2d at 475.

Here, at steps one and two, the ALJ found that Dukes was not engaging in a

substantial gainful activity and that Dukes had several severe impairments: HIV

positive, asthma, lumbar back pain, a depressive disorder, and borderline

intellectual functioning.  At step three, the ALJ found that these impairments did

not meet or equal the severity of any impairment in Appendix 1 listings in the

regulations. *See* 20 C.F.R. Pt. 404, Subpt. P. App. 1.  At step four, the ALJ found

that Dukes could not perform her past relevant work.  However, at step five, the

ALJ determined that Dukes's RFC included the ability to do simple work and that

jobs consistent with her RFC existed in significant numbers in the local and

national economies.   On appeal, Dukes claims that the ALJ's analysis was
deficient in several respects.

Dukes argues that the ALJ's decision is not supported by substantial
evidence because the ALJ (1) failed to properly evaluate the opinions of the
physicians of record; (2) failed to properly assess the limitations resulting from
Dukes's asthma; (3) failed to properly assess Dukes's mental impairments; and (4)
found that Dukes can perform other work existing in significant numbers in the
national economy without support from substantial evidence.

### A. The ALJ Properly Evaluated the Opinions of the Physicians of Record

Dukes contends that the ALJ failed to give proper weight to the treating
physician's recommendation, specifically to the opinion of Dr. Johnson.   In
addition, Dukes argues the ALJ erred in failing to complete the required analysis
before rejecting the views of the treating physician.   She bases her argument on
*Newton v. Apfel*, 209 F.3d 453, 458 (5th Cir. 2000), in which the 5th Circuit
reversed an ALJ's decision where the ALJ rejected the opinion of a treating
physician without performing an analysis based on the six factors listed in 20
C.F.R. § 404.1527(d)(2).

However, Dukes's contention that *Newton* required the ALJ to analyze Dr.
Johnson's assessment pursuant to 20 C.F.R. § 404.1527(d)(2) is incorrect.   The
*Newton* analysis is designed for cases in which the ALJ "summarily reject[s] the
opinion of [a] treating physician, based only on the testimony of a non-specialty

medical expert who has not examined the claimant." *Newton*, 209 F.3d at 458.
That is not the situation in the present case.

The ALJ may ultimately give less weight to the medical opinion of any
physician when his statements are conclusory, unsupported, or otherwise
incredible. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). In his
decision, the ALJ discusses in detail Dr. Johnson's medical opinion. The ALJ
found the limitations set out by Dr. Johnson to be unsupported by the medical
evidence and inconsistent with the record. Specifically, Dr. Johnson determined
that Dukes's prognosis was fair, that she was suffering from HIV, back pain,
asthma, and depression, that her symptoms were back pain and asthma, and that
the necessary treatments were ibuprofen and muscle relaxers. Dr. Johnson then
indicated with a check mark that the impairments were not expected to last at least
twelve months. Dr. Johnson provided a severely debilitating prognosis, indicating
Dukes could stand less than two hours, sit for about two hours, required
unscheduled breaks during an eight-hour day depending on her asthma, could
occasionally lift less than ten pounds, and rarely lift ten pounds.

In discussing Dr. Johnson's opinion, the ALJ explicitly mentions the
inconsistencies between a prognosis of fair that would not last at least twelve
months, and the severe limitations noted by the doctor. The ALJ held the
limitations imposed by Dr. Johnson, even for less than twelve months, were not
supported by any of the medical evidence on record, and Dr. Johnson's opinions
were therefore given little weight.

In response to the ALJ's determination, Dukes contends it is obvious the doctor did not intend to check the "less than twelve months box." Dukes argues that HIV is not curable, so it is highly unlikely Dr. Johnson would expect the condition to resolve in less than twelve months. The Court finds Dukes's argument is without merit. Here, there is nothing in the record that indicates Dukes demonstrated any symptoms of HIV. To the contrary, every medical record after her initial diagnosis indicates the medication adequately controlled her HIV. Therefore, Dr. Johnson may have concluded that all limitations would have ended before twelve months, and could have made an entirely reasonable assessment when checking the less than twelve months box. As Dukes even mentions in her complaint, a finding of a "fair" prognosis with a finding that impairments would not last twelve months are "inconsistent" findings. Accordingly, the Courts finds that the ALJ was justified in rejecting Dr. Johnson's opinion.

In the present case, the ALJ fully considered the information provided by Dr. Johnson and others, and adequately explained his rationale for not giving controlling weight to the opinion of the treating physician. As it is the role of the ALJ to resolve evidentiary conflicts, the court will not substitute its judgment for the ALJ when the decision is supported by substantial evidence and is founded in sound legal standards. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983). In addition, the determination of any *legal* conclusions (such as the ability to work) are reserved to the Commissioner. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); 20 C.F.R. §§ 404.1527(e)(1), (3), 416.927.

### B. The ALJ Properly Considered the Evidence Regarding Dukes's Asthma

Dukes contends that the ALJ failed to properly assess the limitations from her asthma when evaluating her RFC and her ability to perform "other work" available at step five.

The court's review of the record is limited to determining whether there is substantial evidence in the record to support the decision of the ALJ, and the Commissioner has the responsibility of resolving any conflict in the evidence. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm. 42 U.S.C. § 405(g); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). As long as the ALJ supports his decision with substantial evidence, an ALJ's failure to mention every notation in the medical record does not equate with a failure to consider the evidence. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (discussing that ALJ is required to discuss evidence in support of claim but not required to perform "an exhaustive point-by-point discussion").

In the case before this court, Dukes provided an extensive record documenting her struggles with asthma from 1998 until 2004, including sixteen emergency room visits related to asthma. However, these incidents all occurred well before Dukes's alleged date of disability of September 2006. More importantly, medical records after this date indicated that her asthma was under control through the use of medication, and therefore did not present any serious

impediments.  The ALJ did note that Dukes suffered from severe asthma, but stated that evidence submitted showed that the medication helps to control the asthma.  Indeed, Dukes's medical records show that her visits after 2004 did not evidence any signs of debilitating asthma.  If an impairment can be reasonably remedied or controlled by medication, it cannot serve as a basis for a finding of disability.  *Johnson*, 864 F.2d at 348; *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); 20 C.F.R. §§ 404.1530, 416.930.  Dukes has cited the court to no evidence after the date of disability where the asthma was unresponsive to medication or treatment. The ALJ discusses the fact that Dukes uses a nebulizer to treat her asthma, while also noting that there have been no significant emergency room or hospital visits related to the exacerbation of her asthma recently.  The issue is not how much evidence supports a finding that asthma is limiting, but, rather, whether substantial evidence supports the ALJ's finding. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  The Court finds more than a scintilla of evidence to support the ALJ's conclusion that the asthma is no longer an impediment to work.

### C. The ALJ Properly Considered the Evidence Regarding Dukes's Mental Impairments

Dukes next argues that the ALJ failed to properly consider Dukes's mental abilities at step five.  Specifically, Dukes cites *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), to argue that the ALJ was required to find that she could initially obtain employment and, more importantly, maintain employment.  The Court disagrees.

The Fifth Circuit has made it clear that "nothing in *Watson* suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case." *Frank*, 326 F.3d at 619. The *Frank* court gave an example of evidence that might necessitate a separate finding of a claimant's ability to maintain employment: "For example, if Frank alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination." *Id.* Similarly, in *Cline v. Astrue*, 557 F. Supp. 2d 835, 849 (N.D. Tex. 2008), a claimant's documented bipolar disorder required a specific determination. The court determined that the treating psychiatrist's evaluation that plaintiff was unable to sustain full time employment due to intermittent periods of depression or irritation was sufficient. *Id.* But, without a showing that the claimant's aliment waxes and wanes, the claimant's ability to maintain employment is subsumed in the RFC determination. *Frank*, 326 F.3d at 619. Dukes has not made the requisite showing.

The Fifth Circuit provided three examples of claims that do not rise to the level of *Frank*: (1) that the claimant had good days and bad days; (2) that pain from epidural injections would vary in intensity or wax and wane; and (3) the opinion of a health manager that the plaintiff would not be able to work thirty hours a week on a reliable basis. *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005). In that case, the court determined the evidence did not come close to the standard provided by *Frank*. *Id.*

In the instant case, Dukes has not presented sufficient evidence that her mental disability waxes and wanes. As noted by the ALJ, the medical records indicate that the medications are successfully controlling Dukes's ailments. Additionally, at no point does Dukes allege that she could only work for short periods of time. Instead, she alleged that she could not work at all. Dukes argues that the ALJ's determination that she had three instances of decompensation prove the presence of an impairment that waxes and wanes, and therefore requires a specific finding. However, as the ALJ explained in his opinion, those instances of decompensation must be combined with another marked restriction to meet the "paragraph B" criteria. Considering the cases mentioned above, the record does not provide enough evidence to require the ALJ to make a finding as to whether Dukes could maintain employment.

## D. The ALJ failed to identify and resolve the conflicts between the VE's testimony and information in the Dictionary of Occupational Titles ("DOT"), and the error was prejudicial.

Finally, Dukes argues that the ALJ's decision should be reversed because the ALJ relied on the VE's erroneous testimony to find other work available at step 5. The ALJ found that Dukes had the RFC to perform light work including lifting/carrying twenty pounds occasionally, ten pounds frequently; standing/walking six hours out of an eight hour workday; sitting six hours out of an eight hour workday; no work around dangerous hazardous moving machinery or unprotected heights; limited to simple, routine 1, 2, or 3 step repetitive tasks; and limited to occasional contact with coworkers and only incidental contact with

the general public.   In response to this finding, the VE testified that Dukes could perform work as an office cleaner, laundry press operator, and photocopy machine operator.   However, the RFC provided by the ALJ directly conflicts with requirements of the jobs provided by the VE.

First, the DOT states that the job of office cleaner is defined as requiring the exertional capability for "heavy work."   This exceeds Dukes's ability to perform no more than "light" exertional work. *See* DOT, Listing 381.687-014. Second, the job of both a "Machine Operator" in Photocomposing, and the job of "Operator" in the category of "Instant Print," require a Specific Vocational Preparation ("SVP") of six, and exceed Dukes's ability to perform only "simple" work. *See* DOT, Listing 650.582-018; 979.362-010.   Finally, the job of laundry press operator requires Dukes to work with a "hot-head type" pressing machine, necessarily requiring Dukes to work around dangerous machinery, as prohibited by her RFC.   *See* DOT, Listing 363.685-010.   Therefore, all three jobs identified by the VE demand more effort than Dukes is able to perform according to the ALJ's determination.

Under the Social Security Rulings, occupational evidence provided by a VE generally should be consistent with the occupational information supplied by the DOT.   SSR 00-4p, 2000 SSR LEXIS 8, at *4 (December 4, 2000).   As part of the ALJ's duty to fully develop the record of a hearing, when there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must obtain a reasonable explanation for the conflict before relying on the VE's evidence to

support a determination of disability.  *Id.* at *5.  Thus, although an ALJ may rely on VE testimony that conflicts with information in the DOT, the ALJ must explain in his decision how he resolved this conflict.  *Bean v. Barnhart*, 454 F. Supp. 2d 616, 622 n.15 (E.D. Tex. 2006) (quoting SSR 00-4p, 2000 SSR LEXIS 8).

The Commissioner contends that claimants are not permitted to scan the record for implied or unexplained conflicts and then present the conflict as a reversible error.  *Carey*, 230 F.3d at 145.  However, the Fifth Circuit has recognized that when a "direct an obvious conflict" exists between the VE's testimony and the DOT and the ALJ fails to explain or resolve the conflict, the testimony is "so lessened that reversal and remand for lack of substantial evidence usually follows."  *Id.* at 146.  Here, the ALJ did ask the VE whether her testimony conflicted with the DOT information, but the VE erroneously stated that it did not. The *Carey* court further determined that "a vocational expert's erroneous characterization of the exertional level or skills required to perform a particular job calls into question both the probative value and reliability of the expert's testimony."  *Id.* at 147.  Likewise, a discrepancy between the ALJ's determination of the claimant's RFC and the VE's testimony that the claimant can perform certain identified jobs with inconsistent skill requirements "may require remand for further exploration."  *Id.*

Neither the VE nor the ALJ recognized or discussed the conflict between the VE's testimony and the DOT.  Likewise, neither the VE nor the ALJ articulated plausible reasons for finding the VE's testimony more credible under

the circumstances.  However, even in light of this procedural error by the ALJ, if Dukes's substantive rights have not been affected, then the error is considered harmless and the ALJ's decision will be affirmed. *Audler*, 501 F.3d at 448-49.  To establish prejudice, the "claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'" *Carey*, 230 F.3d at 142 (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

The Commissioner relies on *Carey's* ruling that the apparent conflict between the VE's testimony and Dukes's ability was not substantial enough to require remand.  However, this situation may be easily distinguished from that in *Carey*.  In *Carey*, the conflict surrounded the VE's testimony that a one-armed man could complete the requirements of a cashier because he had the necessary dexterity in his hand.  *Carey*, 230 F.3d at 144.  The *Carey* court specifically noted that the conflict "does not involve the type of direct and obvious conflict at issue when the [VE's] characterization of the exertional or skill level required for a particular job is facially different from . . . the DOT." *Id.* at 146-47.  Additionally, the court noted that the situation in *Carey* did not involve a conflict between the ALJ's determination of the claimants RFC and that description in the DOT.  *Id.* at 147.

Conversely, in *Montez v. Astrue*, 2011 U.S. Dist. LEXIS 410 (S.D. Tex. 2011), the District Court determined that a discrepancy between the VE's testimony and the DOT was prejudicial and therefore required remand. Specifically, the Court determined that a conflict between the VE's testimony that

a job only required "occasional" handling and the DOT's requirement for "frequent" handling resulted in the recommendation of three jobs that all required more handling than the plaintiff's RFC permitted. *Id.*

The present case is distinguishable from *Carey* and analogous to *Montez*. A direct conflict may arise when the VE's testimony creates a conflict between the ALJ's RFC determination and the description of the jobs in the DOT. *Carey*, 230 F.3d at 145. Upon proper investigation, the ALJ would have found that all three jobs have greater requirements than Dukes is able to perform according to the ALJ's RFC. The ALJ's duty to resolve any discrepancy between the VE and the DOT should have resulted in a discussion regarding those differences. While it is possible the ALJ would have found a reasonable explanation for allowing the discrepancy, it is also possible the ALJ would have found Dukes was unable to perform the other work suggested by the VE. Dukes need not establish unequivocally that a different decision would have been reached; she simply must show that the result might have changed. *Id.* at 142.

Accordingly, the Court finds that the ALJ's failure to identify and resolve conflicts between the VE's testimony and information in the DOT was prejudicial and requires remand.

### E. The ALJ's error was not harmless.

The Fifth Circuit has determined that courts reviewing denials must apply a harmless error analysis. *Audler*, 501 F.3d at 448. The *Audler* court further explained that "'[p]rocedural perfection in administrative proceedings is not

required' as long as 'the substantial rights of a party have not been affected.'" *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

In this case, the errors at step five detailed above could, once corrected, result in the award of disability benefits. For example, if the VE was unable to provide any further other work in the economy that aligns with the DOT, the ALJ could determine that Dukes's impairments warrant disability payments. Accordingly, the errors are not harmless.

## CONCLUSION

For the reasons set forth above, the Court finds there is not substantial evidence in the record to carry the Commissioner's burden at Step Five to prove there is other work Plaintiff can perform in light of her age, education, work experience, and physical RFC.

Accordingly, Plaintiff's Motion for Summary Judgment is **granted**; the Commissioner's Motion for Summary Judgment is **denied**; the decision of the ALJ is **reversed**, and this matter is **remanded** to the ALJ to reconsider his decision at Step Five.

Signed at Houston, Texas on July 2̲8̲ , 2011.

George C. Hanks, Jr.
**United States Magistrate Judge**